The Honorable Tiffany M. Cartwright

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SWINOMISH INDIAN TRIBAL COMMUNITY, *et al.*,

Plaintiffs,

v.

NATIONAL MARINE FISHERIES SERVICE, *et al.*,

Defendants.

Case No. 2:26-cv-02473-TMC

Consolidated Cases:
2:26-cv-02474-TMC
3:26-cv-05788-TMC

**FEDERAL DEFENDANTS' OPPOSITIONS TO PLAINTIFFS' MOTONS FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINTS [DKT. NO. 19 IN 2:26-CV-2473; DKT. NO. 25 IN CASE NO. 2:26-CV-2474]**

NOTE ON MOTION CALENDAR:
Dkt. No. 19 in 2:26-cv-2473: October 29, 2026
Dkt. No. 25 in 2:26-cv-2474: October 22, 2026



U.S. Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-5785

This case presents a single legal question: whether the final rule rescinding the regulatory definition of "harm" under the Endangered Species Act (ESA) was lawful. *See* 91 Fed. Reg. 43300 (July 14, 2026) (Final Rule). Federal Defendants have lodged the administrative record and are ready to proceed to summary judgment briefing. A just, speedy resolution of Plaintiffs' claims serves the public interest and comports with Rule 1. *See* Fed. R. Civ. P. 1.

Plaintiffs[1] take a different tack. Rather than proceed apace to summary judgment, Plaintiffs want to inject collateral, post-decisional disputes over leaked agency memoranda—documents that merely restate analysis the agencies already articulated in the Final Rule and carry no independent legal effect.[2] That effort is a textbook attempt to delay merits resolution and to transform an otherwise straightforward Administrative Procedure Act (APA) challenge into a roving inquiry into internal deliberations. The Court should not condone this tactic. Plaintiffs' proposed supplemental claims are futile. The memoranda are not "final agency action" under the APA because they do not consummate agency decision-making or determine rights or obligations. The memoranda are, at most, post-decisional analysis without legal consequences. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *FTC v. Standard Oil Co.*, 449 U.S. 232, 239-40 (1980). Nor do Plaintiffs plausibly allege Article III injury traceable to these memoranda. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Allowing supplementation also would undermine settled APA principles that judicial review is confined to the administrative record and to the bases the agency invoked at the time of decision. Post hoc memoranda cannot expand the record or supply new rationales. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Camp v. Pitts*, 411 U.S. 138, 142

---

[1] This memorandum in opposition addresses both the motion to supplement filed by Plaintiff Puyallup Tribe of Indians (Dkt. No. 19) and the motion to supplement filed by Plaintiffs Center for Biological Diversity, *et al.* (Dkt. No. 25 in case no. 2:26-cv-2474). Plaintiffs Swinomish Indian Tribal Community *et al.* are named on the caption because these cases are consolidated, but they do not, at this time, have a pending motion to supplement.

[2] The U.S. Fish and Wildlife Service's memorandum was leaked to the public; the National Marine Fisheries Service subsequently released its memorandum in response to a FOIA request.


U.S. Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-5785

(1973) (per curiam); *SEC v. Chenery Corp*., 318 U.S. 80, 87 (1943). And, under Rule 15(d), the Court may deny supplementation for undue delay and futility, particularly where the proposal would derail efficient resolution of the existing claims and prejudice the orderly progression of summary judgment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court therefore should deny the motions to supplement.

## BACKGROUND

Plaintiffs in these consolidated cases challenge the Final Rule rescinding the regulatory definition of "harm" as used in the ESA's "take" prohibition. The ESA regulates "take" of listed species. "'[T]ake' means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). Previously, the U.S. Fish and Wildlife Service and the National Marine Fisheries Service (collectively, the Services) defined "harm" within the definition of "take" to include "an act which actually kills or injures wildlife. Such act may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." 46 Fed. Reg. 54748, 54750 (Nov. 4, 1981); *see also* 64 Fed. Reg. 60727, 60731 (Nov. 8, 1999).

In 1995, applying *Chevron* deference, the Supreme Court upheld the now-rescinded definition of "harm" as a "permissible" construction of the statute. *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 697, 703, 708 (citing *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). Justice Scalia authored a canonical dissent, explaining that the ESA did not allow for the Services' now-rescinded definition of "harm." *Id.* at 714-36 (Scalia, J., dissenting). Focusing on the text, Justice Scalia explained that the words Congress used to define "take" share "the sense of affirmative conduct intentionally directed against a particular animal or animals." *Id.* at 720.



U.S. Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-5785

In the Final Rule, the Services vindicated Justice Scalia and rescinded the regulatory definition of "harm," concluding that it was not the best reading of the statute. The Services explained:

> ["T]o 'take,' when applied to wild animals, means to reduce those animals, by killing or capturing, to human control" (515 U.S. at 717 (Scalia, J., dissenting)). And here, under the *noscitur a sociis* canon, the term "harm," like the other nine verbs in the definition of "take," should be construed to require an "affirmative act[] . . . directed immediately and intentionally against a particular animal—not [an] act[] or omission[] that indirectly and accidentally cause[s] injury to a population of animals["] (515 U.S. at 719-720 (Scalia, J., dissenting); *see also id.* at 719. . . .

91 Fed. Reg. at 43301 (alterations except the first and last in original) (footnote omitted). The Final Rule further explained that the "meaning of the term 'harm' within the larger definition of 'take' was expertly explicated by Justice Scalia in his *Sweet Home* dissent." *Id.* at 43302.

Following the Final Rule, the Services signed memoranda that address the ESA's take prohibition, as interpreted by Justice Scalia and in the Final Rule. *See* Dkt. Nos. 19-3; 19-4. The memoranda summarize in practical terms the meaning of the ESA's "take" prohibition following the effective date of the Final Rule. Specifically, they restate that the Final Rule adopted Justice Scalia's *Sweet Home* dissent, which reduces the "take" prohibition to four elements: (1) an affirmative act that is (2) intentionally directed at, and (3) operates directly on, (4) particular living animals. Dkt. No. 19-3 at 3-4; 19-4 at 3-4.[3] The memoranda then address the statute's *mens rea* provisions, which as Justice Scalia explained attach to the animal's biological identity. Dkt. No. 19-3 at 5; 19-4 at 5.

Nothing in the memoranda is new. The four elements come from Justice Scalia's dissent, which is the only authority to which the tables in the memoranda cite. *Compare* Dkt. No. 19-3 at 3; Dkt. No. 19-4 at 3, *with Sweet Home*, 515 U.S. at 715-22, 732-35 (Scalia, J., dissenting). The Final Rule had already adopted the dissent's interpretation and repeatedly quoted its "directed immediately and intentionally against a particular animal" formulation. *Sweet Home*,

[3] Page citations to the memoranda refer to the page numbers generated by CM/ECF.



U.S. Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-5785

515 U.S. at 720 (Scalia, J., dissenting); 91 Fed. Reg. at 43301, 43305-06. The memoranda further illustrate application of the "take" prohibition with specific examples (poison, felled trees, drained ponds, and unharmed butterfly), which are Justice Scalia's own examples. *Compare* Dkt. No. 19-3 at 3-4; Dkt. No. 19-4 at 3-4, *with Sweet Home*, 515 U.S. at 721, 735 (Scalia, J., dissenting). The new whale and bat examples simply apply the dissent's line between conduct directed at animals and conduct that injures them "indirectly and accidentally." Dkt. No. 19-3 at 4; Dkt. No. 19-4 at 4; *Sweet Home*, 515 U.S. at 719-20 (Scalia, J., dissenting); 91 Fed. Reg. at 43306. The *mens rea* discussion in the memoranda repeats Justice Scalia's discussion on *mens rea*, including the elk-and-mule-deer example. Dkt. No. 19-3 at 4-5; Dkt. No. 19-4 at 4-5; *Sweet Home*, 515 U.S. at 721-22 (Scalia, J., dissenting). The post hoc memoranda therefore summarize prior analysis in the Final Rule and Justice Scalia's dissent; they do not break new ground.

Nonetheless, Plaintiffs in two of the three cases—Plaintiff Puyallup Tribe of Indians and Plaintiff Center for Biological Diversity[4]—now seek leave to supplement their complaints with claims challenging two non-binding, post-decisional legal memoranda addressing the ESA's "take" prohibition. Plaintiffs allege that these proposed supplemental claims arise under the APA. Plaintiff Puyallup Tribe of Indians alleges that the Services' memoranda are arbitrary and capricious, were issued without notice-and-comment rulemaking, and were issued in violation of the National Environmental Policy Act (NEPA). Dkt. No. 19-1 ¶¶ 89-100. Plaintiff Center for Biological Diversity similarly alleges that the Services' memoranda are arbitrary and capricious and were issued without notice-and-comment rulemaking. Case No. 2:26-cv-2474, Dkt. 25-1 ¶¶ 119-32.

## STANDARD OF REVIEW

A plaintiff may not supplement its complaint as a matter of right but, instead, must seek leave of court to do so. *See* Fed. R. Civ. P. 15(d). Courts may deny a motion for leave to

[4] This memorandum collectively refers to Plaintiffs in Case No. 2:26-cv-2474 by the lead Plaintiff—the Center for Biological Diversity.

supplement if supplementation would be futile. *San Luis & Delta Mendota Water Auth. v. U.S. Dep't of Interior*, 236 F.R.D. 491, 500 (E.D. Cal. 2006). A proposed claim may be deemed futile if it fails as a matter of law, fails to state a claim, or its defeat is inevitable on summary judgment. *See Ctr. for Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943, 956 (9th Cir. 2023) (inevitable defeat on summary judgment); *Parents for Priv. v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020) (failure of legal theories); *see also Arnold v. Metlife Auto & Home*, 834 F. App'x 365, 366 (9th Cir. 2021) (unpublished) (applying futility analysis to motion to supplement). A complaint fails to state a claim where it "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

## ARGUMENT

Challenging final agency action is a jurisdictional prerequisite to an APA claim. When seeking leave to insert new claims in this case, Plaintiffs assert, without elaboration, that the agencies' legal memoranda constitute final agency action. Their threadbare arguments do not make it so. Nor do Plaintiffs have standing to challenge the agencies' non-binding legal analysis. Because their proposed claims are not cognizable under the APA and fail to meet the requirements for Article III standing, their proposed supplement is futile, and the Court should deny Plaintiffs' motions for leave to supplement their complaints and efforts to further delay a decision on this important matter.

### I. Plaintiffs' Proposed Supplements Do Not Challenge a Final Agency Action.

Plaintiffs invoke the APA for the proposed supplemental claims. "The APA sets forth the procedures by which federal agencies are accountable to the public and their actions [are] subject to review by the courts." *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992). Specifically, the APA provides a right of review to a "person suffering legal wrong because of [an] agency action or adversely affected or aggrieved by agency action." 5 U.S.C. § 702. To be subject to review, the agency action must be either "made reviewable by statute [or] final agency action for which

there is no other adequate remedy." *Id.* § 704. The final agency action requirement is jurisdictional. *See Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006). An agency action is "final" for purposes of § 704 when it: (1) marks "the 'consummation' of the agency's decisionmaking process"; and (2) is a decision "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett*, 520 U.S. at 177-78 (citations omitted).

**A. The memoranda do not consummate any agency decision-making process.**

Beginning with the first *Bennett* prong, the mere issuance of legal analysis, untethered to any specific agency decision-making process, fails to constitute final agency action under the APA. Specifically, the memoranda are not part of any identifiable agency decision-making process. They do not grant or deny a permit, resolve any enforcement matter, or adopt a rule. For example, the issuance of biological opinions and incidental take statements generally constitutes final agency action as the consummation of the statutory decision-making process described in ESA Section 7. *See* 16 U.S.C. § 1536(a)(2), (b)(4); *Bennett*, 520 U.S. at 178. The memoranda do no similar work. They instead address legal principles independent of any agency process or proceeding. As the Ninth Circuit explained in *City of San Diego v. Whitman*, 242 F.3d 1097, 1101-02 (9th Cir. 2001), an agency letter interpreting a statute and encouraging a permittee to submit an application to renew a permit was not final because it did not consummate an agency decision-making process. Indeed, the process would not even begin until the permittee submitted an application to renew its permit. *Id.* Here, too, the memoranda are at most groundwork for future agency decisions, not final agency actions themselves.[5]

**B. Legal consequences do not flow from the legal memoranda.**

The second *Bennett* prong asks whether the agency action is a decision "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett*,

---

[5] Nor, for similar reasons, do the memoranda even constitute "agency action" under the APA, which refers to "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof." 5 U.S.C. § 551(13).

520 U.S. at 178. Here, the memoranda determine no rights or obligations, and no legal consequences flow from them. The memoranda neither command anyone to act or refrain from acting, nor do they "impose an obligation, deny a right, or fix some legal relationship." *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 (9th Cir. 1990) (citation omitted). In this way, the memoranda are unlike the "jurisdictional determination" at issue in *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590 (2016). There, regulations and interagency agreements established that the challenged jurisdictional determination would create or deny a safe harbor from enforcement. *Id*. at 598-99. Here, the memoranda are "a bare statement of the agency's opinion," not actual commands to agencies or regulated parties regarding any specific project or other matter. *S. Cal. All. of Publicly Owned Treatment Works v. EPA*, 8 F.4th 831, 837-38 (9th Cir. 2021) (guidance is not final when "subsequent agency decision making is necessary to create any practical consequences").

Internal agency statements analyzing the law impose no legal consequences because "it is the court that ultimately decides whether a given regulation [or statute] means what the agency says." *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 103-04 & n.4 (2015); *accord Inst. for Fisheries Res. v. Hahn*, 424 F. Supp. 3d 740, 749 (N.D. Cal. 2019) (agency document interpreting the word "drug" under the Food, Drug, and Cosmetic Act was not final agency action). Legal consequences flow to no one from non-binding internal agency statements interpreting the law generally. For example, in *Whitewater Draw Natural Resource Conservation District v. Mayorkas*, 5 F.4th 997, 1009 (9th Cir. 2021), the Ninth Circuit considered a challenge to a manual that an agency used in NEPA reviews. The court concluded that the manual was not a final agency action "by which rights or obligations have been determined, or from which legal consequences will flow," explaining, "NEPA, not the Manual, is the source of any binding legal obligations to which [the agency] is subject." *Id.* So too here. The ESA and its "take" prohibitions are the source of any legal obligations, not the Services' non-binding interpretations of the law. Moreover, legal obligations imposed by the ESA are fixed at the time of a statute's

enactment in 1973, not when the Services interpreted those mandates in 2026. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). The ESA and the Final Rule—not the Services' subsequent non-binding legal memoranda—fix rights and have legal consequences.

The Ninth Circuit has given effect to these principles when differentiating "between an informational document that merely provides the agency's interpretation of a statute, . . . and a decision that determines how a statute or regulation applies to facts for enforcement purposes." *Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249, 1258 (9th Cir. 2022). An agency informational "document [that] . . . is little more than a restatement" of the applicable law does not constitute final agency action. *Id.* at 1260. This is the case here. The memoranda break no new ground by merely restating what was in the Final Rule. Dkt. No. 19-3; Dkt. No. 19-4. In the Final Rule, the Services adopted the rationale in Justice Scalia's dissent as the best reading of the statute. 91 Fed. Reg. at 43301. The Services explained that Justice Scalia's interpretation of the term "harm" was the best reading of the statute: the "term 'harm,' like the other nine verbs in the definition of 'take,' should be construed to require an 'affirmative act[] . . . directed immediately and intentionally against a particular animal—not [an] act[] or omission[] that indirectly and accidentally cause[s] injury to a population of animals.'" *Id.* (quoting *Sweet Home*, 515 U.S. at 719-720 (Scalia, J., dissenting)) (alterations in original).

Plaintiffs' contrary arguments are not supportable. They allege that the Services' memoranda go beyond the Final Rule because "the Services will now recognize take only where an actor commits 'an affirmative act that is intentionally and purposefully directed at a particular animal.'" Case No. 2:26-cv-2474, Dkt. No. 25 at 3; *see also* Dkt. No. 19 at 4. But even Plaintiffs concede that the Final Rule does the same thing. Plaintiff Puyallup Tribe of Indian's operative complaint admits:

> [T]he Services concluded that "single, best meaning" could be found in Justice Scalia's dissenting opinion, *id.,* which relied on a historical understanding that the word "'take,' when applied to wild animals, means to reduce those animals, by killing or capturing, to human control,'" such that all the verbs within Congress's statutory definition of "take," including "harm," "should be construed to require

> an 'affirmative act[] . . . directed immediately and intentionally against a particular animal,'" *id.* (alteration in original) (quoting *Sweet Home*, 515 U.S. at 717, 719-20 (Scalia, J., dissenting)).

Dkt. No. 18 ¶ 56 (alterations except the first in original).

And Plaintiff Center for Biological Diversity similarly admits:

> [T]he Services' proffered statutory interpretation underlying the Rescission adopted the *dissenting view* from the Supreme Court's *Sweet Home* decision as the law of the land. Under this view, the term "harm" in the ESA's definition of "take" applies only to an affirmative action "directed immediately and intentionally against a particular animal"—e.g., wounding, trapping, or killing. *Sweet Home*, 515 U.S. at 720 (Scalia, J., dissenting).

Case No. 2:26-cv-2474, Dkt. No. 18 ¶ 9 (alterations except the first in original). Factual assertions in a plaintiff's complaint are binding on the plaintiff. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). Plaintiffs therefore confirm that the memoranda add nothing new to the existing complaint; they direct their claims at post hoc memoranda that summarize analysis and decisions already made in the Final Rule and Justice Scalia's dissent and not, as required under the APA, at some new final agency action.

**II. Notice-and-comment rulemaking was not required.**

Plaintiffs' proposed supplemental claims about notice-and-comment rulemaking are similarly futile. The APA requires agencies undertaking rulemakings to advise the public through a Federal Register notice of the terms or substance of the proposed rule, allowing the public a period to comment. 5 U.S.C. § 553; *Erringer v. Thompson*, 371 F.3d 625, 629 (2004). Plaintiffs and the rest of the public had ample opportunity to comment on the Services' adoption in the Final Rule of Justice Scalia's view of "take" as the best reading of the ESA. Plaintiffs' suggestion that they needed another opportunity to address the exact same issues—a comment opportunity on post hoc memoranda—is nonsensical.

In any event, the notice-and-comment requirement does not apply to "interpretative rules" that do not have the force of law. 5 U.S.C. § 553(b)(A); *see also Perez*, 575 U.S. at 1203-04. For all the reasons discussed above, the memoranda could not have the "force of law" because they merely summarize the position in the Final Rule and Justice Scalia's dissent


U.S. Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-5785

regarding the meaning of "take." Thus, the memoranda were at most "interpretative" documents for which notice and comment was not required.

**III. Plaintiffs merely speculate about general future harms.**

Finally, Plaintiffs lack standing to challenge the memoranda.[6] Article III confines federal court jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation modified). To establish standing, Plaintiffs must show (1) a concrete and particularized injury that (2) is traceable to the challenged conduct and (3) would likely be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. Because Plaintiffs seek prospective relief, they must establish a "sufficient likelihood of future injury." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). "[S]peculation does not suffice." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).

Plaintiffs' challenges to the Services' memoranda fail because they merely speculate about future injury, and they cannot show traceability. The Services' memoranda, by themselves, have consequences for no one. The memoranda restate what the ESA and Final Rule already require and, thus, break no new ground. Plaintiffs cannot show that the Services' non-binding restatement of the Final Rule's legal analysis of "take," in and of itself, injures them.

Plaintiffs do not challenge any decision about a specific species, project, incidental take permit, or conservation plan. Plaintiff Center for Biological Diversity details at length its members' interests and alleged standing to bring this case, *see* Case No. 2:26-cv-2474, Dkt. No. 25-1 ¶¶ 19-22, but not one allegation ties the memoranda to a concrete, imminent injury caused by the Services' memoranda. *See Nat'l Park Serv. v. Nat'l Tr. for Hist. Pres. in the U.S.*, No. 26A203, 2026 WL 2564318, at *3 (U.S. Aug. 31, 2026) (distress at, or disagreement with, a defendant's

---

[6] The Court need not reach this issue if it determines that Plaintiffs have not challenged a final agency action. Similarly, the court need not reach the issue of final agency action if it determines that Plaintiffs lack standing to challenge the Services' memoranda.

actions is not injury in fact). Plaintiff Center for Biological Diversity has submitted approximately 160 pages of declarations, not one of which mentions either of the Services' memoranda or a specific action that Plaintiff or its members allege have occurred or will occur because of the memoranda. Case No. 2:26-cv-2474, Dkt. No. 25-3. Plaintiff Puyallup Tribe of Indians generally discusses its interest in the conservation and restoration of certain fish species that are important for its Treaty fishing rights, and claims that the memoranda harm its "Treaty, cultural, spiritual, educational, dietary, and commercial interests," *see* Dkt. No. 19-1 ¶¶ 22-23, but not one allegation ties the memoranda to a concrete, imminent injury. At most, the Tribe alleges the memoranda will "remov[e] essential protections for listed fish" that the Tribe relies on, *id.* ¶ 23, but it fails to identify what specific decisions will be made about any particular species in the future. By naming only at a high level habitats that unidentified future actions might affect, Plaintiffs ask this Court to find jurisdiction "at a high level of generality," which does not suffice under Article III. *Murthy v. Missouri*, 603 U.S. 43, 59 (2024).

Plaintiff Center for Biological Diversity also speculates that, because of the take memoranda, "individuals are likely to engage in activities that cause severe harm to endangered and threatened species." Case No. 2:26-cv-2474, Dkt. No. 25-1 ¶ 95. The Ninth Circuit has already rejected this reasoning. In *Wildearth Guardians v. U.S. Department of Justice*, 752 F. App'x 421, 422-23 (9th Cir. 2018) (unpublished), the Court explained that the causal chain between individual prosecutorial decisions and any injury claimed by plaintiff organizations requires "several layers of speculation." To trace the plaintiffs' claimed injuries to any action of the government, the court would have to speculate about how the Services would allocate their resources to refer prosecutions to the Department of Justice, how the Department of Justice would make prosecutorial decisions, and how third parties would adjust their behavior in response to such decisions. *Id.* Similarly, here, Plaintiffs only speculate that unnamed individuals are "likely" to engage in activities that harm endangered and threatened species; but they do not even attempt to connect the dots between the Services' memoranda, individual behavior, and


U.S. Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-5785

Plaintiffs' alleged injuries. Such speculation is inconsistent with the "fairly traceable" requirement of Article III standing. *See id.*

**CONCLUSION**

Plaintiffs' proposed supplements do not challenge a final agency action for purposes of the APA because the Services' memoranda do not (1) mark "the 'consummation' of the agency's decisionmaking process"; and (2) are not a decision "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *See Bennett*, 520 U.S. at 177-78. Plaintiffs' proposed claims about notice-and-comment procedures similarly fail because the memoranda do not have the force of law. Furthermore, Plaintiffs lack standing to challenge the memoranda because they merely speculate in the most general terms about future harms that may arise from the memoranda. The Court should deny Plaintiffs' motions for leave to supplement their complaints.

Respectfully submitted this 16th day of October, 2026. I certify that this memorandum contains 4,186 words, in compliance with the Local Civil Rules.

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
CHARLES E.T. ROBERTS
Deputy Assistant Attorney General
MEREDITH L. FLAX, Deputy Section Chief
MICHAEL R. EITEL, Assistant Section Chief

*<u>/s/ Sara M. Warren</u>*
SARA M. WARREN, Trial Attorney
MICHELLE M. SPATZ, Senior Trial Attorney
United States Department of Justice
Energy and Natural Resources Division
Wildlife and Marine Resources Section
Benjamin Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
202-598-5785 (Warren); 202-598-9741 (Spatz)
sara.warren@usdoj.gov; michelle.spatz@usdoj.gov

ALEC S. BOWMAN, Trial Attorney
United States Department of Justice

Energy and Natural Resources Division
Natural Resources Section
Benjamin Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
202-532-3098
alec.bowman@usdoj.gov