The Hon. Tiffany M. Cartwright

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION

| | |
|---|---|
| SWINOMISH INDIAN TRIBAL COMMUNITY et al., | No. 2:26-cv-02473-TMC |
| Plaintiffs, | [Consolidated with Case Nos. 3:26-cv-05788-TMC, 2:26-cv-02474-TMC] |
| v. | PLAINTIFFS' JOINT REPLY IN SUPPORT OF MOTIONS TO FILE FIRST SUPPLEMENTAL COMPLAINTS |
| NATIONAL MARINE FISHERIES SERVICE et al., | NOTE ON MOTION CALENDAR:<br>ECF No. 19 in 2:26-cv-2473: October 29, 2026<br>ECF No. 25 in 2:26-cv-2474: October 22, 2026 |
| Defendants. | |

## INTRODUCTION

Federal Defendants fail to establish a basis for denying Plaintiffs' motions to supplement their complaints.[1] Defendants do not argue that supplementation would cause prejudice or was requested in bad faith. They make only passing references to undue delay, *e.g.*, Opp'n 1, ECF No. 20, ignoring that supplementation would minimize delay by combining intrinsically related matters into a single case. Instead, Defendants contend that supplementation would be futile. Their arguments are meritless.

[1] Puyallup Tribe and Center for Biological Diversity, *et al.* ("CBD") submitted separate motions to supplement; Defendants filed a single opposition to both.

## ARGUMENT

The test for futility with respect to a motion to supplement under FRCP 15 is the same as the test for a motion to dismiss under FRCP 12(b)(6) for failure to state a claim. A proposed supplement is futile only if Plaintiffs cannot plead sufficient factual matters, accepted as true, to state a claim that is plausible on its face. *See, e.g.*, *Mujica v. AirScan Inc.*, 771 F.3d 580, 592 (9th Cir. 2014). Plaintiffs have met this standard.

Defendants' main argument for futility is that their memos interpreting the Endangered Species Act's "take" prohibition ("Take Memos") are not final agency actions. An agency action is final if it "mark[s] the consummation of the agency's decisionmaking process" and is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quotations omitted). Even if an agency labels a rule as interpretive, "the court need not accept the agency characterization at face value." *Hemp Indus. Ass'n v. Drug Enf't Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003). Instead, courts interpret finality "in a pragmatic and flexible manner," looking to factors such as whether the action is a definitive statement and has immediate impacts. *Saliba v. U.S. Sec. & Exch. Comm'n*, 47 F.4th 961, 967 (9th Cir. 2022). The Take Memos meet that test.

### I. The Take Memos marked the consummation of agency decision-making.

#### A. The Take Memos did not merely restate the Rescission.

Defendants claim that the Take Memos are not final agency actions because they "merely restate analysis" from Defendants' rescission of the regulatory definitions of "harm" ("Rescission"), Opp'n 1, but the Memos went significantly farther.[2]

[2] Defendants also claim the Take Memos do not constitute agency action. Opp. 7 n.5. But memoranda that "lay the groundwork for future agency decision," *id.*, and "interpret[]" statutes, *id.* at 11, squarely fall under the broad umbrella of the definition of "agency action," *See*, *e.g.*, 5

The Rescission eliminated the regulatory definition of "harm" without making any changes to the meaning or application of the nine other verbs in the statutory definition of "take." *See* 16 U.S.C. § 1532(19). The document was titled "Rescinding the Definition of 'Harm' Under the Endangered Species Act," and it focused on the term "harm" as it applies to significant habitat modification or degradation. And the Rescission expressly "adopted" Justice Scalia's view of "the role and meaning *of the term 'harm'* within the larger definition of 'take,'" 91 Fed. Reg. 43300, 43302 (July 14, 2026) (emphasis added).

The Take Memos, however, construed and applied the Rescission as adopting Justice Scalia's dissent in *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon* as to the *entire* definition of "take," not just "harm." *See* Opp'n 9; Take Memo 1, ECF No. 19-3.[3] The Take Memos are the vehicle that instruct all Service personnel to adopt a new definition of "take" as a whole.

The Take Memos also introduced a new requirement that only "purposefully directed" actions qualify as take under the ESA. Take Memo 1. This limitation did not appear in the Rescission. Each Take Memo used the words "purpose," "purposeful," or "purposefully" eight times to describe actions constituting take, while the Rescission *never* did so, despite being much lengthier. The "purpose" requirement at the core of the Take Memos added to the Rescission.

By creating a "purpose" test for all takings, the Take Memos purported to nullify the statutory concept of incidental take—take that "is incidental to, *and not the purpose of*, the carrying out of an otherwise lawful activity." 16 U.S.C. § 1539(a)(1)(B) (emphasis added); *see*

---

U.S.C. § 551(4), (13); *Whitman v. Am. Trucking Assns.*, 531 U.S. 457, 478 (2001) (term "cover[s] comprehensively every manner in which an agency may exercise its power").

[3] The Fish & Wildlife Service ("FWS") Memo, ECF No. 19-3, is textually identical to the National Oceanic and Atmospheric Administration ("NOAA") Memo, ECF No. 19-4.



EARTHJUSTICE
810 3rd Ave #610
SEATTLE, WA 98104
(206) 343-7340

*also* CBD's Mot. 3. In the Take Memos, Defendants disclaimed their authority to regulate this vast category of incidental take.

The distinction between the Rescission and the Take Memos crystallizes in the examples discussed in each. The Regulatory Impact Analysis for the Rescission stated that incidental take "exclusively from activities that cause direct take, such as wind energy operations that may result in mortality of listed species," may continue to qualify as take, without any reference to the purpose of such action. AR0046. By contrast, the Take Memos made the activity's underlying purpose the linchpin of the "take" analysis: "A vessel that inadvertently strikes a whale has not taken it, because the vessel's course was not set against the whale. Felling a tree is not a take of the bats roosting in it unless the tree is felled for the purpose of killing or capturing them." Take Memo 3. Plainly, the Take Memos did not "merely restate" the Rescission.

B. <u>The Take Memos represent Defendants' final decision.</u>

The Take Memos also provided Defendants' final word on these issues. Defendants protest that the Take Memos were "untethered to any specific agency decision-making process." Opp'n 6. But that point simply underscores that Defendants failed to conduct the statutorily required decisionmaking process in issuing the Memos. As Plaintiffs have alleged, Defendants unlawfully bypassed required public notice and comment on the Take Memos. Issuing the Memos under cover of darkness is a statutory violation, not a means to insulate actions from judicial review.

Critically, Defendants never deny that the Take Memos represented their final word on the meaning of "take." The sole countervailing case that Defendants cite concerned a preliminary opinion from a federal agency about a permit application that a party had yet to file, with administrative appeals yet to come. *See City of San Diego v. Whitman*, 242 F.3d 1097, 1101–02



EARTHJUSTICE
810 3rd Ave #610
SEATTLE, WA 98104
(206) 343-7340

(9th Cir. 2001). In contrast, neither the Take Memos nor Defendants' brief contains any suggestion that Defendants are still formulating their final position on "take" or that any decisionmaking steps remain.

**II. The Take Memos have immediate legal consequences.**

The Take Memos were issued by leading agency authorities (the FWS Director and the NOAA General Counsel) and contain overtly binding language with immediate legal consequences, satisfying the second prong of the *Bennett v. Spear* test. Defendants' counter-argument never once references what the Memos actually said.

The Take Memos established a new interpretation of the term "take," listing four elements of take and then describing what each element "*requires*." Take Memo 2 (emphasis added). They asserted that, to commit take, "the person *must* intend to act on an animal and *must* do so for the purpose of affecting the animal," and the "act *must* be directed at living individual animals." *Id.* at 2–3 (emphases added). It is simply impossible to argue that the Memos contain "the kind of qualification-laden, guideline-offering, advice-giving, recommendation-making, or discretion-preserving language that courts have held signifies a lack of finality." *Nat. Res. Def. Council v. U.S. Dep't of the Interior*, 397 F. Supp. 3d 430, 446 (S.D.N.Y. 2019) (finding agency interpretation of "take" under Migratory Bird Treaty Act was final agency action). Indeed, Defendants have not described a single scenario where they could deviate from the Memos' strictures.

Defendants cite several examples where courts found an action not to be "final," but those cases are readily distinguishable. Opp'n 7–8. One found optional agency guidance non-final; another found a personal letter in response to a specific query non-final. *S. Cal. All. of Publicly Owned Treatment Works v. EPA*, 8 F.4th 831, 837–38 (9th Cir. 2021); *Advanced*



EARTHJUSTICE
810 3rd Ave #610
SEATTLE, WA 98104
(206) 343-7340

*Integrative Med. Sci. Inst. v. Garland*, 24 F.4th 1249, 1258 (9th Cir. 2022). These unsurprising results do not control here, where the Take Memos advise exactly how the term must be interpreted throughout entire agencies. Defendants' meandering argument that courts, not agencies, are the ultimate arbiters of statutory interpretation does not refute that the Take Memos meet the *Bennett v. Spear* test for final agency action. *See id.* Moreover, none of the cases refute the bottom line that any finality analysis must be context-specific, with the focus on what these particular memos command. *Saliba*, 47 F.4th at 967.

At this stage, Plaintiffs need not show they will prevail on the merits, and Defendants will remain free to assert—contrary to the Take Memos' text—that the Memos do not change the regulation of incidental take. But Plaintiffs have met their burden to supplement their complaints.

## III. Plaintiffs face imminent, concrete harms sufficient for standing.

Defendants' argument that Plaintiffs lack standing for the supplemental claims is equally misplaced. To establish Article III standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Cottonwood Env't Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1079 (9th Cir. 2015) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). Contrary to Defendants' misrepresentations, Opp'n 10–11, Plaintiffs' complaints and declarations are replete with examples of injuries traceable to the Take Memos. For example:

- Puyallup Tribe explained that declining fish populations and resultant ESA listings have precluded the Tribe from fully exercising its treaty fishing right. *See* Tribe's Proposed First Suppl. Compl. ¶¶ 19–22. Further removing protections for listed species, as the

Take Memos demand, would amplify those problems and hinder the Tribe's efforts to recover valued species.

- Columbia Riverkeeper declarant Johnson and Conservation Law Foundation declarants Shaw and Ciccotelli detailed their interests in protecting ESA-listed salmon from the effects of dam operations. *See* CBD's Proposed First Suppl. Compl. ¶¶ 19.B, 19.C. While the Rescission sought to eliminate ESA protections from habitat destruction, their injuries are broader if salmon are not protected from *any* form of incidental take.
- Conservation Northwest declarant Werntz enjoys spending time in the presence of ESA-listed northern spotted owls and has advocated both personally and professionally to conserve the species. *See id.* ¶ 19.D. While the Rescission would enable logging operations to destroy owl habitat, the Take Memos go further by allowing loggers to fell trees where owls are actively nesting or rearing their young, increasing his injury.

Plaintiffs' declarations do not specifically mention the Take Memos because the declarations preceded the Memos, which were signed without any public notice. The Memos heighten the injuries the complaints and declarations described. Moreover, the supplementation analysis focuses on the allegations in Plaintiffs' proposed pleadings, and the Court may presume "that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up); *see also, e.g.*, CBD's Proposed First Suppl. Compl. ¶¶ 21–22 (alleging injury from Take Memos).

Plaintiffs are not merely speculating about prosecutorial discretion and how third parties would respond. First, that third parties will change their behavior in response to the Take Memos—by, for example, committing incidental take that the Memos purport to allow—certainly falls within the "commonsense inferences" that courts can draw when assessing



EARTHJUSTICE
810 3rd Ave #610
SEATTLE, WA 98104
(206) 343-7340

standing. *Diamond Alt. Energy v. EPA*, 606 U.S. 100, 116 (2025). Second, Plaintiffs are primarily threatened by the immediate impact on *Defendants' own behavior*. The Memos renounced Defendants' statutory obligation to regulate incidental take—most critically, in administering the ESA's incidental take statement and permit processes, which both require that Defendants "shall" take regulatory action to address incidental take, but which Defendants' new position in the Take Memos vitiates. *See* 16 U.S.C. §§ 1536(b)(4), 1539(a)(2)(B). That injury is not contingent on agency discretion or intervening third-party decisions, and the effect on Plaintiffs' interests in listed species is not speculative.

## CONCLUSION

The Court should grant Plaintiffs' motions to supplement their complaints.

Respectfully submitted this 22nd day of October, 2026. I certify that this memorandum contains 2,073 words, in compliance with the Local Civil Rules.

*s/ Kristen L. Boyles*
Kristen L. Boyles (WA Bar No. 23806)
Earthjustice
810 Third Ave., Suite 610
Seattle, WA 98104
T: (206) 343-7340
kboyles@earthjustice.org

Benjamin M. Levitan (NY Bar No. 5215058)
(*pro hac vice*)
Earthjustice
48 Wall Street, Floor 15
New York, NY 10005
T: (202) 797-4317
blevitan@earthjustice.org

Sharmeen Morrison (CA Bar No. 360435)
(*pro hac vice*)
Earthjustice
180 Steuart Street #194330

San Francisco, CA 94105
T: (415) 217-2005
smorrison@earthjustice.org

Timothy J. Preso (MT Bar No. 5255)
(*pro hac vice*)
Earthjustice
P.O. Box 4743
Bozeman, MT 59772-4743
T: (406) 586-9699
tpreso@earthjustice.org

*Attorneys for all Plaintiffs*

*s/ Erica A. Fuller*
Erica A. Fuller (MA Bar No. 669647)
(*pro hac vice*)
Conservation Law Foundation
62 Summer St.
Boston, MA 02110
T: (508) 400-9080
efuller@clf.org

*Attorney for Plaintiff Conservation Law Foundation*

*s/ Brian Segee*
Brian Segee (CA Bar No. 200795)
(*pro hac vice*)
Center for Biological Diversity
226 W. Ojai Ave., Suite 101-442
Ojai, CA 93023
T: (805) 750-8852
bsegee@biologicaldiversity.org

*Attorney for Plaintiff Center for Biological Diversity*

*s/Jane Steadman*
Jane Steadman, WSB No. 44395

*s/Laura Boyer*
Laura Boyer, OSB No. 261755
*(pro hac vice)*

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 640
Seattle, WA 98104
(206) 344-8100
jsteadman@kanjikatzen.com
lboyer@kanjikatzen.com

*s/ Lisa A. Anderson*
Lisa A. Anderson, WSB No. 27877
Puyallup Tribe of Indians
3002 Duct Cho Street
Tacoma, WA 98404
(253) 573-7852
Lisa.Anderson@PuyallupTribe-nsn.gov

*Attorneys for Puyallup Tribe of Indians*