The Honorable Tiffany M. Cartwright

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SWINOMISH INDIAN TRIBAL COMMUNITY et al.;<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL MARINE FISHERIES SERVICE et al.<br><br>Defendants. | Case No. 2:26-cv-02473-TMC<br><br>SWINOMISH AND SQUAXIN'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT<br><br>NOTE ON MOTION CALENDAR: November 24, 2026 |

## INTRODUCTION

Federal Defendants have not identified a valid reason to deny Plaintiffs Swinomish Indian Tribal Community and Squaxin Island Tribe's ("the Tribes") motion to amend and supplement their complaint. Defendants do not argue that amendment or supplementation would prejudice them, even though prejudice is the factor that "carries the greatest weight." *Schwartz v. Miller*, 153 F.4th 918, 932 (9th Cir. 2025). They do not allege bad faith or make more than a passing mention of delay. Nor could they reasonably claim bad faith, delay, or



ZIONTZ CHESTNUT LLP
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-1230

prejudice when the Tribes' proposed amendments add claims that are already part of this suit and have long been identified in the case schedule, and supplementation supports the efficient, timely resolution of related claims involving the Take Memos. Instead, Defendants inappropriately attempt to inject premature merits issues into the futility standard for supplemental and amended complaints.

The Tribes' motion is futile only if "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). Here, the Tribes' proposed complaint easily meets this threshold. Defendants' additional claim that the Tribes lack standing is also without merit.

## ARGUMENT

### I. Plaintiffs' proposed supplements challenge final agency action and are not futile.

Defendants primarily argue that supplementation is futile because the Take Memos are not final agency action. Agency actions are final when they "mark the consummation of the agency's decisionmaking process" and determine "rights or obligations" or have "legal consequences." *Bennett v. Spear* 520 U.S. 154, 178 (1997) (citation modified). As Plaintiffs Center for Biological Diversity et al. (CBD) and Puyallup Tribe of Indians explained in their joint reply, Dkt. 21 at 2-6, the Memos are final agency action. We incorporate and add to their arguments here.

#### A. The Take Memos announce Defendants' final decision on "take."

First, the Memos "mark the consummation of [Defendants'] decisionmaking process." *Bennett*, 520 U.S. at 178 (citation modified). The Take Memos announce Defendants' final



ZIONTZ CHESTNUT LLP
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-1230

decision on the definition of "take." The language is not "tentative or interlocutory." *Id.* Instead, the Memos declare requirements for the "application and administration of the 'take' provision": take "requires" affirmative conduct, and a person "must" act intentionally and purposefully. Dkt. 25-4 at 3; Dkt. 25-5 at 3-4.[1]

The only case Defendants cite, *City of San Diego v. Whitman*, is inapposite because it involved an agency's preliminary opinion about a not-yet-filed permit application, which would have future administrative appeals. *See* 242 F.3d 1097, 1101–02 (9th Cir. 2001). Here, Defendants never argue that they are still formulating their final decision on "take" or that future decision-making steps remain—and the Take Memos contain no such indication. Instead, Defendants confusingly suggest that not even the Final Rule is final, as it lays "the groundwork for future agency decisions" as in *City of San Diego*. Opp'n 5, Dkt. 31. That position cannot be squared with Defendants' insistence that "the Final Rule is the final agency action." Opp'n 3. The Final Rule marks the consummation of Defendants' decisionmaking on the meaning of "harm," and the Take Memos do the same for the meaning and application of "take."

### B. The Take Memos have legal consequences.

Second, "legal consequences will flow" from the Take Memos, and the Memos determine "rights or obligations." *See Bennett*, 520 U.S. at 178 (citation omitted). As in *Bennett*, the Take Memos are final agency action because they "alter the legal regime" for regulated parties and "authoriz[e] . . . take . . . if (but only if) it complies with the prescribed conditions." *Id.* The Take Memos put forth a new definition of "take," prescribing that an act is

[1] Page citations to the memoranda refer to the page numbers generated by CM/ECF.



ZIONTZ CHESTNUT LLP
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-1230

take only if it is "affirmative" and "intentionally and purposefully directed at a particular animal." Dkt. 25-4 at 1; Dkt. 25-5 at 1. This is a radical departure from fifty years of agency practice, which directly affects the scope, application, and enforcement of the Endangered Species Act (ESA). The Memos are "a decision that determines how a statute or regulation applies to facts for enforcement purposes." *Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249, 1258 (9th Cir. 2022).

Defendants now argue the Final Rule already adopted this new definition of "take," Opp'n 7, despite the fact that the Final Rule states, "[t]he definition of 'take' in section 3 of the [ESA] remains unchanged." 91 Fed. Reg. 43,300, 43,305 (July 14, 2026). The Rule was titled "Rescinding the Definition of 'Harm' Under the Endangered Species Act," not "Adopting a Definition of 'Take.'" While the Rule incorporates Justice Scalia's dissent, it does so in the context of defining "harm." *See, e.g.,* 91 Fed. Reg. at 43,302 (adopting "the role and meaning of the term 'harm' within the larger definition of 'take'" as "expertly explicated by Justice Scalia"). The only codified effect of the Final Rule was to "remov[e] the definition for 'Harm,'" 91 Fed. Reg. at 43,317, leaving in place, for example, the definition of "harass," which states that "[h]arass . . . means an intentional *or negligent* act," 50 C.F.R. § 17.3 (2026).

It is only under the Take Memos that harassing an animal unintentionally (i.e., negligently) is not "take." So too for wounding, trapping, even killing—all acts that can be done unintentionally. In this regard, the Take Memos "effectively amend[] a prior legislative rule," which means they are "legislative" and have "the 'force of law.'" *Wilson v. Lynch*, 835 F.3d 1083, 1099 (9th Cir. 2016) (quoting *Hemp Indus. Ass'n v. DEA*, 333 F.3d 1082, 1087 (9th Cir. 2003)); *see also Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 100 (1995) (holding a

regulation would be legislative and require notice-and-comment rulemaking if it "adopted a new position inconsistent with any of the Secretary's existing regulations").[2]

Further, even if the Final Rule addressed the definition of "take," the Take Memos still add new elements. The Final Rule never mentions a requirement for action to be "purposeful," a key component of the Take Memos' definition. *See* Dkt. 25-4 at 2-4; Dkt. 25-5 at 2-4. Defendants suggest that since Justice Scalia's dissent references "verbs of purpose," Opp'n 8, the Final Rule somehow adopted this requirement without mentioning it. According to Defendants, the Final Rule establishes legal consequences it did not even discuss, but the Take Memos' explicit definition has no effect. That cannot be.[3]

The Take Memos determine regulated parties' legal obligations towards listed species. They prescribe that parties may kill an animal so long as they do not act with that purpose. The Memos are final agency action with the force of law, and as such, the Memos required notice-and-comment rulemaking. *See* 5 U.S.C. § 553(b)(A) (exempting interpretive, but not legislative rules).[4]

**C. Alternatively, supplementation supports existing, non-futile, claims.**

---

[2] While "the test for finality is independent of the analysis for whether an agency action is a legislative rule" and "interpretive rules can be final," legislative rules are "necessarily final" because they have "the force and effect of law." *Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 635 (D.C. Cir. 2019).

[3] Defendants also argue that the notice of proposed rulemaking gave the public opportunity to comment on the new definition of "take," Opp'n 8, but the public could not be expected to know, prior to the Take Memos, that Defendants intended to redefine terms beyond "harm" or to incorporate a "purposeful" requirement.

[4] The fact that the Take Memos were "addressed to agency staff and lawyers, not to regulated parties," Opp'n. 6, only demonstrates that Defendants failed to follow statutorily-required rulemaking procedures. *See Biden v. Texas*, 597 U.S. 785, 808-09 (2022) (holding internal memoranda that "bound" agency staff were final agency action).



ZIONTZ CHESTNUT LLP
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-1230

If instead Defendants are correct that the Final Rule adopted a new definition of "take"—one that that is not codified and must be discerned from reading the Rule and Justice Scalia's dissent together—then the Take Memos are still relevant to the Tribes' underlying claims about the Final Rule. Defendants misunderstand this alternative ground for supplementation. Opp'n 8. The Tribes are asking to supplement their complaint, not to supplement the record. The act of issuing the Memos and their content demonstrates the Final Rule's effects on the environment and listed species. For example, the Memos show that Defendants will not regulate vessel strikes or tree felling as "take." Dkt. 25-4 at 4; Dkt. 25-5 at 4. Those effects are relevant to determining whether NEPA review or ESA consultation should occur. Because the issuance of the Take Memos is an "occurrence, or event that happened after the date of" the Tribes' complaint, the Tribes seek supplementation to include them to support existing claims, in addition to asserting new claims. Fed. R. Civ. P. 15(d). Defendants do not and cannot argue that undue delay, bad faith, prejudice, or futility bar adding the Take Memos to inform existing claims.

**II. The Tribes have standing.**

Defendants assert that the Tribes' injuries are only "traceable to the Rule" and that "an order setting aside the memoranda would redress nothing." Opp'n 9. As explained *infra* and in the proposed supplemental complaint, Dkt. 25-2 ¶ 11, the Take Memos are more expansive than the Rule. That means an order setting aside the Final Rule could only partially redress the Tribes' injuries, leaving in place the Memos' alteration of the other nine terms in the "take" definition, including "harass." *See* 16 U.S.C. § 1532(19).



ZIONTZ CHESTNUT LLP
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-1230

Moreover, the Tribes specifically allege the Take Memos would "greatly reduce the necessity for regulated parties to seek incidental take authorizations" by not just eliminating consideration of effects on habitat, per the Final Rule, but also limiting incidental take to "affirmative conduct intended to kill or injure wildlife that is a different species than anticipated." Dkt. 25-2 ¶ 17. The Take Memos further reduce protections for listed species the Tribes rely on and deprive the Tribes of procedural rights to participate in ESA Section 10 permitting processes. Setting aside the Take Memos would redress those injuries. And the Tribes have certainly met the "[r]elaxed" requirements for procedural standing, as following proper APA and NEPA procedures could have led to a different substantive result. *See California v. Azar*, 911 F.3d 558, 571 (9th Cir. 2018).

## III. Amendment to add ESA Section 7 claims is routine, not futile.

Lastly, Defendants oppose the Tribes' amendments adding claims that are already part of this suit. They do not claim, nor could they, that doing so adds any delay or prejudice. Quite the opposite: Defendants insist on unnecessary and duplicative briefing to justify the Tribes' routine amendment to add ESA consultation claims after the required 60-day notice period ended. Defendants ignore the applicable standard that leave to amend should be freely given. Fed. R. Civ. P. 15(a)(2). Instead, they contend the Court should resolve the merits of the Tribes' ESA § 7 claim now, in briefing on a motion to amend, rather than in a dispositive motion that addresses the very claims already in the case through the consolidated plaintiffs CBD and Puyallup. *See* Dkt. 18; Dkt. 18 in case no. 2:26-2474. Defendants admit that "claims alleging that FWS failed to consult raise an ESA citizen-suit claim." Opp'n 11. The Tribes have done so, they claim that Defendants failed to consult under ESA § 7 and have pleaded



ZIONTZ CHESTNUT LLP
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-1230

facts showing the Rule affects listed species. *See, e.g.,* Dkt. 25-2 ¶ 12-14. That is enough for the futility analysis. *See Missouri ex rel. Koster*, 847 F.3d at 656.[5]

Defendants here are action agencies. They promulgated a substantive rule that may affect listed species, which requires consultation. *See Env't Prot. Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073, 1079 (9th Cir. 2001) ("[C]itizen suits are a permissible means to enforce the substantive provisions of the ESA against regulated parties—including government agencies like the FWS in its role as the action agency."). Defendants cannot escape that duty by claiming their action was merely administrative. *See W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 496 (9th Cir. 2011) (consultation required despite agency's claim that regulations were "purely administrative").

## CONCLUSION

The Court should grant Plaintiffs' Motion for Leave to File First Amended and Supplemental Complaint.

Respectfully submitted this 24th day of November, 2026. I certify that this memorandum contains 2,093 words, in compliance with the Local Civil Rules.

/s/Wyatt Golding
Wyatt Golding, WSBA No. 44412
Eleanor Bohn, WSBA No. 63894
Liliana Elliott, WSBA No. 61946

[5] The Tribes have not brought a claim for failing to consult on the Take Memos. Opp'n 11. The proposed Supplemental Complaint alleges that the Take Memos evidence that the Final Rule requires consultation because it may affect listed species. *See* Dkt. 25-2 at 39 ¶ 15.


ZIONTZ CHESTNUT LLP
2101 FOURTH AVENUE, SUITE 1230
SEATTLE, WASHINGTON 98121
TEL. (206) 448-1230; FAX (206) 448-1230

ZIONTZ CHESTNUT LLP
2101 4th Avenue, Suite 1230
Seattle, WA 98121
wgolding@ziontzchestnut.com
ebohn@ziontzchestnut.com
lelliott@ziontzchestnut.com
T: 206-448-1230
F: 206-448-0962

/s/Weston LeMay
Weston LeMay, WSBA No. 51916

Swinomish Indian Tribal Community
Office of Tribal Attorney
11404 Moorage Way
La Conner, WA 98057
ehaley@swinomish.nsn.us
wlemay@swinomish.nsn.us
(360) 708-0391

*Attorneys for Plaintiff Swinomish Indian Tribal Community*

/s/Amalia R. Walton
Amalia R. Walton, WSBA No. 36754

Squaxin Island Tribe
3711 SE Old Olympic Hwy
Shelton, WA 98584
awalton@squaxin.us
(360) 432-1771 | Phone
(360) 432-3699 | Fax

*Attorney for Plaintiff Squaxin Island Tribe*